UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RITA NAMROD, | |
| Plaintiff, | No. 21 C 5514 |
| v. | Judge Thomas M. Durkin |
| ACIA KL AUTO LLC d/b/a LEADER AUTOMOTIVE GROUP, and/or d/b/a GROSSINGER KIA and/or KIA OF LINCOLNWOOD'S, | |
| Defendant. | |

**MEMORANDUM OPINION AND ORDER**

Rita Namrod alleges that the Defendant car dealership where she worked violated Title VII when it fired her because she is white. She also alleges that Defendant failed to pay her all the compensation she was owed in violation of the Illinois Wage Payment and Collection Act. Defendant has moved for summary judgment. R. 27. That motion is denied.

**Legal Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). To defeat summary judgment, a nonmovant must produce more than a "mere scintilla of evidence" and come forward with "specific facts showing that there is a genuine issue for trial." *Johnson v. Advocate Health and Hosps. Corp.*, 892 F.3d 887, 894, 896 (7th Cir. 2018). The Court considers the entire evidentiary record and

must view all of the evidence and draw all reasonable inferences from that evidence in the light most favorable to the nonmovant. *Horton v. Pobjecky*, 883 F.3d 941, 948 (7th Cir. 2018). The Court does not "weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Ultimately, summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## Background

Namrod was employed by Defendant from 2011 to 2014, and then again from 2015 to August 8, 2019 when she was fired. At the time she was fired, Namrod held the position of Finance Manager. Two or three months before she was fired, Tremayne Young became Defendant's General Sales Manager and was Namrod's supervisor.

On July 27, 2019, Namrod was either late for or absent from work because she was sick but failed to call in. Young called her three times before Namrod answered the phone at 10:40 a.m., which is an hour and 40 minutes after her start time of 9:00 a.m. Young gave Namrod a formal, written warning notice regarding this incident. *See* R. 29-3 at 10-11.

Namrod testified that "when [she] was written up for being late," she pointed out to Young that the Black salespeople were "frequently tardy," and asked why they were not given warnings. *See* R. 27-4 at 4 (10:4-13). Namrod also testified that Young excused the salespeople's conduct by saying that they were "his people." *Id.* Namrod

2

testified further that when she asked for clarification of this comment, Young responded, "you're not Black." *Id.*

Namrod was fired eleven days after she received this warning. But the notice of her termination does not reference the warning, and instead states that she was fired for refusing to do certain tasks within her job description and for screaming at Young in front of customers on more than one occasion. *See* R. 29-3 at 16. Namrod denies that this occurred and notes that Young did not complete a warning notice regarding these alleged incidents.

Namrod claims that she was fired because she is white. Young is Black. Namrod states in her affidavit that the "sales-people were non-management" and she "considered [herself] management." But despite being on a "different employment level" from the salespeople, Namrod believes they were "comparable" to her because "the company policies were applied to both managers and non-managers." R. 29-3 ¶¶ 51-53.

Namrod has not specifically identified any of the salespeople or provided any evidence beyond her own testimony of their race or whether they arrived to work late. Namrod's testimony is also the only evidence of Young's alleged statements about race.

In addition to her discrimination claims, Namrod claims that Defendant failed to pay her all the compensation she was due in violation of the Illinois Wage Payment and Collection Act. Namrod was compensated, at least in part, by commissions on warranties she sold. However, if a sale was later cancelled, her commission was

3

decreased accordingly, which was noted in Namrod's pay records as a "chargeback." Namrod's pay records show that her compensation was decreased by chargebacks in June, July, and August leading up to her termination. Namrod claims that there should not have been any chargeback deductions in her compensation for these months. Namrod contends that the evidence that the chargeback deductions were incorrect is an email dated August 8, 2019, from Defendant's comptroller answering Namrod's request "to see my chargebacks from June's bonus." *See* R. 27-3 at 9; R. 29-4 at 10. The comptroller responded by stating, "I don't show any chargebacks for you in June." *Id.*

## Analysis

### I. Title VII

White people can bring claims for race discrimination under Title VII because the "protections of Title VII are not limited to members of historically discriminated-against groups." *Bless v. Cook Cnty. Sheriff's Off.*, 9 F.4th 565, 574 (7th Cir. 2021). But a white plaintiff has the added burden to produce evidence of "background circumstances" permitting "an inference that the employer has reason or inclination to discriminate invidiously against whites or evidence that there is something 'fishy' about the facts at hand." *Id.*

Namrod included her testimony about Young's racially based comments in the statement of material facts she filed pursuant to Local Rule 56.1. Defendant did not respond to this statement, so Namrod's facts, including her testimony about Young's statements, are deemed admitted. *See* L.R. 56.1(e)(3) ("Asserted facts may be deemed

4

admitted if not controverted with specific citations to evidentiary material."); *Adams v. Egbe*, 2022 WL 832608, at *2 (N.D. Ill. Mar. 21, 2022) ("The movant's failure to controvert the opposing party's statements will likewise result in the admission of those facts."). Also, Defendant in its reply brief implicitly concedes that Young made these statements by again failing to deny them and instead attempting to minimize their significance by characterizing them as merely "off-color and . . . inappropriate for the workplace." R. 30 at 1-2 n.1.

"Smoking gun" evidence of discriminatory intent is "hard to come by." *Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016). As a result, plaintiffs generally rely on the *McDonnell Douglass* burden shifting method to demonstrate racially motivated causation with reference to more favorable treatment of similarly situated members of a different race. *See Dunlevy v. Langfelder*, 52 F.4th 349, 353 (7th Cir. 2022) ("To establish a prima facie case for disparate punishment, [the plaintiff] must show . . . similarly situated employees outside of the protected class were treated more favorably.").

Here, however, Namrod has testified that her supervisor Young expressly told her that she was disciplined differently than Black employees because she is white. Defendant argues that Young's statements are not relevant to Namrod's claim because she was not fired for being late or missing work on July 27, but because she yelled at Young in front of customers and refused to complete certain tasks within her job description. The problem with this argument is that Namrod was fired on August 8, only eleven days after the July 27 conduct for which she was disciplined.

5

Further, Namrod testified at her deposition that she did not yell at Young in front of customers. *See* R. 27-4 at 6 (19:9-10). While Defendant documented the stated reason for Namrod's termination, Defendant failed to contemporaneously document the alleged incidents of Namrod yelling at Young in front of customers. The fact that Young documented Namrod's discipline for being late or absent on July 27, but failed to document or discipline Namrod for what on its face is much more serious conduct occurring more than once over the preceding two months, raises a suspicion that it never happened, but rather is a pretextual excuse for Young's desire to fire Namrod because she is white.

Namrod argues that her claim is supported by the fact that Black salespeople were not disciplined for being late. The problem here is that Namrod has not presented any evidence about *specific* instances of Black salespeople being late. Furthermore, while Namrod has testified that some of the salespeople were Black and held positions comparable to hers, she again has presented no specific evidence from which the Court can evaluate her contentions.

However, while evidence of similarly situated employees would certainly bolster Namrod's claim, it is not necessary here where Defendant has conceded that Young disciplined Namrod based on her race. Further, the failure to contemporaneously document the incidents that are claimed to be the basis for Namrod's termination is evidence that the reasons given are pretextual, and the true reason was Young's personal animus towards Namrod based on her race, which he

6

expressed in the wake of her tardiness or absence on July 27. This is enough evidence for a reasonable jury to find in Namrod's favor on her Title VII claim.

## II. Illinois Wage Collection and Protection Act ("IWCPA")

Defendant's failure to adequately respond to Namrod's statement of material facts also requires denial of Defendant's motion for summary judgment on Namrod's IWCPA claim. Namrod points out that Defendant's comptroller told her in an email that there were no chargeback deductions on her commissions in June. But Namrod's pay statement shows that chargebacks were deducted. *See* R. 29-4 at 7. Namrod included this fact in her statement of material facts. *See* R. 29 at 9 (¶ 51). As discussed, Defendant failed to respond to these statements, thereby admitting them. And further, Defendant again failed to dispute these contentions in its reply brief, thereby implicitly conceding them.

The Court presumes that Namrod's claim and contentions could be easily verified or disputed with records of the sales for which Namrod was owed commissions in the relevant time periods, and confirming whether any of those sales were canceled, thus requiring a chargeback deduction to Namrod's commissions. Defendant submitted documentation of the amounts Namrod was paid. But Defendant has not pointed to evidence of the underlying sales which could confirm whether the chargebacks indicated in Namrod's pay statements were proper. Without the underlying sales data to confirm Defendant's argument that Namrod was properly paid, the undisputed fact that Defendant's comptroller told Namrod that her June compensation should not have had any chargeback deductions is a sufficient

7

basis for a reasonable jury to find that Defendant improperly withheld compensation from Namrod.

## Conclusion

Therefore, Defendant's motion for summary judgment [27] is denied.

ENTERED:

_____
Honorable Thomas M. Durkin
United States District Judge

Dated: January 18, 2024